# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DAVID C. BIGI, et al.,

       Plaintiffs,              :        Case No. 3:11-cv-229

                                   District Judge Thomas M. Rose
   -vs-                            Magistrate Judge Michael R. Merz

                             :

DETECTIVE ROBERT LARGE, et al.,

       Defendants.

## REPORT AND RECOMMENDATIONS

       This case is before the Court on Motion of Defendants City of Vandalia, Ohio, and Robert Large for Judgment on the Pleadings (Doc. No. 17). Plaintiffs oppose the Motion in its entirety (Doc. No. 21) and Defendants have filed a Reply in support (Doc. No. 22).

       This case was referred to a Magistrate Judge under the Dayton General Order of Assignment and Reference because it was initially filed *pro se*. (General Order of July 25, 2011, on the Court's website, at 4.)   The case remains referred although Plaintiffs retained counsel. *Id.*  A motion for judgment on the pleadings is a dispositive motion on which a Magistrate Judge must render a recommendation rather than a decision. 28 U.S.C. § 636(b)(1)(A) and (B).

       Plaintiffs purport to bring suit under 42 U.S.C. § 1983 for deprivation of constitutional rights on behalf of themselves and a class of similarly situated persons; they seek compensatory damages and declaratory and injunctive relief. (Amended Complaint, Doc. No. 14, PageID 57, 63-64.) Plaintiffs assert that Defendant Large is a police officer of Defendant City of Vandalia, Ohio, *Id.* at ¶ 4, PageID 58. Vandalia allegedly has a policy and procedure of using an order and journal entry form, issued by the Vandalia Municipal Court on request of Vandalia police officers, for obtaining

>confidential and privileged documents without the showing of probable cause, without the requirement of sworn testimony, without judicial oversight as to the records obtained as a result of the "Order and Journal Entry", beyond the territorial jurisdiction of the Vandalia Municipal Court and by magistrates who exceeded their power to issue said "Order and Journal Entry" because there were not then pending at the time of the issuance of the "Order and Journal Entry" any case for which the documents were to be used, which policy and procedure has been applied by and through the City's Municipal Court to all jurisdictions that fall within the territorial jurisdiction covered by the Vandalia Municipal Court and which has existed for years.

*Id.* at ¶ 5, PageID 58.  Vandalia is alleged to have acted under color of state law in making a "template" for the "order and journal entry" available to its police officers on city-owned computers. *Id.* at ¶ 18.  Plaintiffs aver that "[m]agistrates employed by the City of Vandalia, Ohio, and the municipal court judge, who is likewise employed by the City of Vandalia, Ohio[1], sign" orders and journal entries presented by law enforcement officers to obtain records from outside the territorial jurisdiction of the Vandalia Municipal Court. *Id.* at ¶ 22.  Instead of sworn testimony, it is averred that law enforcement officers give the Vandalia judicial officers unrecorded briefings and that the judges do not apply a probable cause standard to issuance of the "order and journal entries." *Id.* at ¶¶ 24-25, PageID 62.  This practice is alleged to violate "Defendant's [sic] Fourth and Fourteenth Amendment rights secured by the United States Constitution." *Id.* at ¶ 33, PageID 63.

In ruling on a motion for judgment on the pleadings, the Court must accept all well-pleaded material allegations of the complaint as true.  *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001); *Paskvan v. City of Cleveland Civil Serv. Comm'n.*, 946 F.2d 1233, 1235 (6th Cir. 1991), *citing Beal v. Missouri*

---

[1] This Court notes that the Vandalia Municipal Court is not an agency or department of the City of Vandalia.  Rather, it is a state court of the State of Ohio created directly by state statute.  Ohio Revised Code § 1901.01(A).  The judge of the Vandalia Municipal Court is an elected state official, not an employee of the City of Vandalia.  Magistrates of that court are appointed pursuant to Ohio R. Civ. P. 53(A) and are officers of that court, not city employees.

*Pacific R.R.,* 312 U.S. 45, 51 (1941). The Court must then decide whether the moving party is entitled to judgment as a matter of law. *Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir. 1993). This is the same standard applied in deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Tucker v. Middleburg-Legacy Place,* 539 F.3d 545, 549 (6th Cir. 2008); *EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has recently been restated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, " 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.' " 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005),, at 346, 125 S.Ct. 1627; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc .*, 289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Bell Atlantic*, 550 U.S. at 558; *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), the

allegations in a complaint "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008), quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)(emphasis in original).

*Bell Atlantic* overruled *Conley v. Gibson*, 355 U.S. 41, 45-46, specifically disapproving of the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949-1950 ( 2009), the Supreme Court made it clear that *Twombly* applies in all areas of federal law and not just in the antitrust context in which it was announced. Following *Iqbal*, district courts faced with motions to dismiss must first accept as true all of the factual allegations contained in a complaint. This requirement "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 550 U.S. at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. 550 U.S. at 556. Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal,* ___ U.S. ___, 129 S. Ct. 1937, 1949-1950 ( 2009); *Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.)*, 583 F.3d 896, 903 (6th Cir. 2009). Under *Iqbal*, a civil complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. ... Exactly how implausible is "implausible" remains to be seen, as such a malleable standard will have to be worked out in practice." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629-630 (6th Cir. 2009).

**Suit Against Robert Large Individually**

Defendants first assert that the Amended Complaint must be dismissed as to Defendant Large because he is not sued in an individual capacity. (Motion, Doc. No. 17, PageID 79). Plaintiffs make it clear in their Response that they intend to sue Detective Large in both his individual and official capacities (Doc. No. 21). They claim that giving notice of that intent in response to a motion to dismiss is sufficient to satisfy the pleading requirements, *citing Moore v. City of Harriman,* 272 F.3d 769 (6th Cir. 2001)(*en banc*). While it is preferable to be explicit about the capacity in which a defendant is sued under 42 U.S.C. § 1983, "failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." *Id.* at 772. The Court finds Defendant Large has received sufficient notice that he is being sued individually as well as in his official capacity. Of course, the official capacity suit is in effect against the City of Vandalia, his employer. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

**Fourth or Fourteenth Amendment?**

The conduct of Defendants is alleged to have violated Plaintiffs' "Fourth and Fourteenth Amendment rights" (Amended Complaint, Doc. No. 14, ¶ 33, PageID 63.) The Amended Complaint is very conclusory at this point and does not spell out which Fourth or Fourteenth Amendment rights are alleged to have been violated.[2]

The Fourth Amendment by its own terms does not apply to the States; it is only by its

---

[2] Indeed, the pleading is a bit careless at this point, for it avers the Defendants "violated Defendant's" rights. Perhaps the averment was cut and pasted from pleadings in the Plaintiffs' criminal case in this Court. Or perhaps Plaintiffs' counsel, a well-known member of the criminal defense bar in this community, had difficulty shifting gears.

5

"incorporation" into the Fourteenth Amendment that it becomes applicable to conduct under color of state law. *McDonald v. Chicago*, 561 U.S. ___ , 130 S. Ct. 3020, 3034, n. 12; 177 L. Ed. 2d 894 (2010), citing *Aguilar v. Texas*, 378 U.S. 108 (1964) (warrant requirement); *Mapp v. Ohio*, 367 U.S. 643 (1961) (exclusionary rule); and *Wolf v. Colorado*, 338 U.S. 25 (1949) (freedom from unreasonable searches and seizures). Thus a well-pled complaint alleging state officer violations of the Fourth Amendment actionable under 42 U.S.C. § 1983 would assert that the conduct violated both the Fourth and Fourteenth Amendments.

Not content with the incorporated Fourth Amendment rights, however, Plaintiffs assert the Fourteenth Amendment was also pled "as its fundamental due process protection." (Response, Doc. No. 21, PageID 143.) Plaintiffs continue:

> In this case, law enforcement created their very own unique process to obtain orders from the Court to obtain the property of others. This process was deemed violative of constitutional protections. It would seem, from a textual standpoint, the unconstitutionality of this process comes from the Fourteenth Amendment. Admittedly, counsel has been unable to find one case that addresses this type of situation, one way or another. This case would appear to be one of first impression for the Fourteenth Amendment.
>
> Counsel for Plaintiff David Bigi makes a compelling argument that this is not merely a procedural due process claim, but also a substantive due process issue. (<u>United States v. Bigi</u>, 3:09 CR 153, Doc 121, p14.) Plaintiffs incorporate that argument herein, and all others made in that document.

(Response, Doc. No. 21, PageID 143-144.) The referenced document, Plaintiff David Bigi's Third Motion to Reconsider in his criminal case, is thirty-one pages long. There is no rule or process known to this judicial officer which permits a party to incorporate into a pleading, by incorporating it into a memorandum in opposition to a motion to dismiss, all the arguments made in a document in another case filed for an entirely different purpose. In the interest of liberal construction of the Amended Complaint in this civil rights case, the Court is willing to consider as incorporated by reference the argument made at the place cited, to wit, page 14. The incorporated argument or claim

reads in its entirety as follows:

### BRANCH V. ALTERNATIVE BASIS TO SUPPRESS SUBSTANTIVE DUE PROCESS

> The Fourteenth Amendment guarantees due process of law for any deprivation of life, liberty or property. U.S. Const. amend. XIV. This amendment has both a procedural and substantive component. *Planned Parenthood of Se. Pa. v. Casey,* 505 U.S. 833, 846 (1992).
>
> Substantive due process protects two types of privacy rights, an individual's right to make personal decisions relating to marriage, procreation, contraception, family relationships, child rearing and education, *Lawrence v. Texas*, 539 U.S. 558, 574 (2003), and an individual's "interest in avoiding disclosure of personal matters". *Whalen v. Roe*, 429 U.S. 589, 599 (1977) *see also, Nixon v. Adm'r of Gen. Servs*. 433 U.S. 425, 457 (1977).
>
> Following the *Whalen* line of substantive due process, the Sixth Circuit found a "privacy interest of constitutional dimension" against state disclosure of police officers' personnel files that included in part, "their bank account information and account balances". *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1059 (6th Cir. 1998).
>
> It is fundamentally unfair for the government to obtain personal matters by illegal means, means that do not pass constitutional muster, means that do not comport with due process, and means which are egregiously outside the process and for which no contest in federal court is available before being enforced, thus mandating suppression of the records gathered by the "Order and Journal Entry" documents at issue herein.

(*United States v. Bigi*, Case No. 3:09-cr-153, Doc. No. 121, PageID 779.) The Court reads this as a claim that Plaintiffs had a Fourteenth Amendment substantive due process right to have their privacy interest in the information obtained by the Order and Journal Entry process protected from intrusion by state actors, including the Defendants.

Defendants argue there is no Fourteenth Amendment substantive due process right applicable to the circumstances this case beyond those incorporated from the Fourth Amendment, relying in *Radvansky v. City of Olmsted Falls*, 395 F.3d 291(2005). In that case plaintiff alleged a direct Fourteenth Amendment due process violation arising from his arrest without probable cause. The Sixth Circuit held:

> Radvansky's reliance on the Due Process Clause is misplaced, however, because it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area. The Supreme Court has stated that "the Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases, including the detention of suspects pending trial." *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975). The Court went on to note that "the Fourth Amendment probable cause determination is in fact only the first stage of an elaborate system, unique in jurisprudence, designed to safeguard the rights of those accused of criminal conduct." *Id.* More recently, the Court has held that the doctrine of incorporation "has substituted, in these areas of criminal procedure, the specific guarantees of the various provisions of the Bill of Rights . . . for the more generalized language contained in the earlier cases construing the Fourteenth Amendment." *Albright v. Oliver*, 510 U.S. 266, 273, 127 L. Ed. 2d 114, 114 S. Ct. 807 (1994). Thus, because the Due Process Clause of the Fourteenth Amendment does not require any additional procedures beyond those mandated by the Fourth Amendment, we conclude that the Appellees are entitled to judgment on this claim as a matter of law. Therefore, the district court's grant of summary judgment on this count is affirmed.

*Id.* at 313.

*Radvansky* is not controlling here because Mr. Radvansky was making a **procedural** due process claim: without a showing of due process, he claimed, he should not have been deprived of his liberty by being arrested. Plaintiffs, in contrast, are making a **substantive** due process claim: my personal information, embodied in the documents obtained by use of the Order and Journal Entry process, should never have been obtained by the State, regardless of what process was used.

"The substantive component of the Due Process Clause protects fundamental rights that are 'so implicit in the concept of ordered liberty' that 'neither liberty nor justice would exist if they were sacrificed.'" *Doe v. Mich. Dept. of State Police*, 490 F.3d 491(6th Cir. 2007), *quoting Palko v. Connecticut,* 302 U.S. 319, 325 (1937) Such rights include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citations omitted). The Supreme Court has cautioned, however, that it has "always been reluctant to expand

8

the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Id.* When reviewing a substantive due process claim, a court must first craft a "careful description of the asserted right," *Doe, supra*, quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993), and then determine whether that right is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty," such that it can be considered a "fundamental right." *Glucksberg*, 521 U.S. at 721.

Plaintiffs assert that their right to privacy in the seized information is such a fundamental right, relying on *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998). *Kallstrom* recognized that undercover police officers had a protected liberty interest in information in their personnel files, the release of which to persons with a known propensity for violence against whom they had testified seriously increased the risk to their lives, the lives of their family members, and their personal security and bodily integrity. Plaintiffs cite *Kallstrom* as if it recognized a fundamental right of privacy in the police officers' personnel files that included in part, "their bank account information and account balances." That is not accurate. What the Sixth Circuit recognized was a fundamental privacy interest in information in those files the disclosure of which would enhance the risk to the officers' lives and bodily security. It did not so hold with respect to financial information. Instead, the court remanded to the district court the question whether release of financial account information would jeopardize the officers' personal security. 136 F.3d at 1063, n.2. Rejecting a broader interpretation of any substantive due process right to privacy, the court held:

> This circuit has read *Whalen* and *Nixon* narrowly, and will only balance an individual's interest in nondisclosure of informational privacy against the public's interest in and need for the invasion of privacy where the individual privacy interest is of constitutional dimension. See *J.P. v. DeSanti*, 653 F.2d 1080, 1091 (6th Cir. 1981). [footnote omitted] In *DeSanti*, juveniles in Ohio claimed that the post-adjudication dissemination of their social histories to governmental, social, and religious agencies that were members of a "social services clearinghouse" violated their constitutional right to privacy. In reversing the district judge's finding that such dissemination would violate the juveniles' constitutional rights to privacy, this court rejected the

9

notion of a general constitutional right of nondisclosure of personal information against which the governmental action must be weighed. *See id.* at 1088-89. Relying on *Paul v. Davis*, 424 U.S. 693, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976), in which the Supreme Court held that police circulation of a flyer publicizing respondent's arrest for shoplifting did not violate any constitutional right to privacy because the state did not "restrict his freedom of action in a sphere contended to be 'private,'" and because the state has an interest in "publicizing a record of an official act such as an arrest," *id.* at 713, this court stated in *DeSanti* that any constitutional right to privacy must be restricted to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *DeSanti*, 653 F.2d at 1090 (citations omitted). While the opinion in *DeSanti* did not hold that there is never a constitutional right to nondisclosure of private information, it did conclude that "not all rights of privacy or interests in nondisclosure of private information are of constitutional dimension, so as to require balancing government action against individual privacy." *Id.* at 1091. The question then is whether the officers' privacy interests in the personal information contained in their personnel records "are of constitutional dimension." We hold that the officers' privacy interests do indeed implicate a fundamental liberty interest, specifically their interest in preserving their lives and the lives of the their family members, as well as preserving their personal security and bodily integrity.

*Id.* at 1061-1062.

Applying *Kallstrom* and *DeSanti*, this Court does not find Plaintiffs have pled a substantive due process claim for relief regarding the records obtained by Detective Large as a result of the Order and Journal Entry process in this case[3]. The Amended Complaint, even as incorporating the argument from the criminal case, is too vague and conclusory as to the information seized to state a plausible claim. The Motion for Judgment on the Pleadings should be granted as to Plaintiffs' Substantive Due Process claim.

### *RES JUDICATA*

Defendants assert Plaintiffs' claims are barred by the issue preclusion branch of the doctrine of *res judicata* in that they were adjudicated in the criminal case and are barred by that adjudication from being relitigated.

---

[3]Whether substantive due process could be invoked regarding other kinds of documents (e.g., medical records, communications with an attorney, etc.) is beyond the scope of the questions before this Court.

Issue preclusion, or collateral estoppel as it is classically known, precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.  *Taylor v. Sturgell,* 553 U.S. 880 (2008);*Stern v. Mascio*, 262 F. 3rd 600, 608 (6th Cir. 2001), quoting *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F. 2nd 658, 660-61 (6th Cir. 1990).  The issue preclusion doctrine applies only if "(1) the precise issue raised in the present case [was] raised and actually litigated in the prior proceeding; (2) determination of the issue [was] necessary to the outcome of the prior proceeding; (3) the prior proceeding . . . resulted in a final judgment on the merits; and (4) the party against whom [issue preclusion] is sought . . . had a full and fair opportunity to litigate the issue in the prior proceedings."  *Stern v. Mascio*, 262 F. 3rd 600, 608 (6th Cir. 2001), quoting *Smith v. Securities & Exch. Comm'n,* 129 F. 3rd 356, 362 (6th Cir. 1997)(en banc).

Collateral estoppel applies when a §1983 plaintiff attempts to relitigate in federal court issues decided against him in state criminal proceedings.  *Migra v. Warren City School District Board of Education,* 465 U.S. 75 (1984);  *Mulligan v. Schlachter*, 389 F.2d 231 (6th Cir. 1968);  *see, Allen v. McCurry,* 449 U.S. 90 (1980).

Plaintiffs do not deny that their Fourth and Fourteenth Amendment claims were litigated and decided by Judge Timothy Black of this Court when he decided their motion to suppress the evidence obtained by the Order and Journal Entry process.  Nor do they dispute that decision on that issue was necessary to the outcome in their criminal case or that the prior proceeding resulted in a judgment on the merits.  Instead, they assert they did not received a full and fair opportunity to litigate the issue.  Their logic is that the United States initially responded to the motion to suppress by analogizing the Order and Journal Entry process to an administrative subpoena and only raised lack of standing in its reply memorandum.  Judge Black then, they say, decided Plaintiffs lacked standing "after never hearing from the Plaintiffs on the issue." (Response, Doc. No. 21, PageID

11

144.)

However, Plaintiffs admit that, after Judge Black's decision on the motion to suppress,

> Plaintiffs obtained new defense counsel, and new counsel raised a number of new issues. The Court allowed new counsel to reargue and revisit the standing or expectation of privacy issue that was raised by the United States for the first time in its Reply, and new counsel certainly did. (Id., Doc. 121.) However, the Court never revisited its ruling. As to some aspects of the Court's previous ruling, the Court decided to reconsider, and reopen the record. (Id., Doc. 148.) And, the Court issued a new decision. (Id., Doc.187.) However, as to the issue of whether Plaintiffs had a reasonable expectation of privacy, the trial court never resolved or responded to Defendant's first opportunity to discuss and litigate the issue. Under these circumstances, it would be unfair to say that Judge Black's decision on whether Plaintiffs had a reasonable expectation of privacy was the result of a full and fair opportunity to litigate the issue.

(Response, Doc. No. 21, PageID 144-145.)

Plaintiffs substantially mischaracterize Judge Black's decisions in the criminal case. In his first ruling on the motion to suppress, he expressly held that Plaintiff David Bigi did not have standing to suppress the fruits of the Order and Journal Entry process, despite its illegality[4], because they did not have a reasonable expectation of privacy in the information sought (*United States v. Bigi*, Case No. 3:09-cr-153, Doc. No. 100, PageID 671-673.) In his decision after reconsideration and after allowing Robert Bigi to join the motion to suppress, he again held the Plaintiffs had no standing, rejecting their new bases for asserting a reasonable expectation of privacy (*United States v. Bigi*, Case No. 3:09-cr-153, Doc. No. 170, PageID 1338.) The same decision rejects Plaintiffs' substantive due process claim under *Kallstrom* as well. *Id.* at PageID 1338-1339.

Thus Plaintiffs not only had an opportunity to raise their standing in their initial motion to

---

[4] Judge Black described the Order and Journal Entries in this case as *de facto* search warrants. That would certainly imply that persons whose property is to be seized as a result of those documents are entitled to the protections of the Fourth Amendment: issuance only upon evidence of probable cause presented under oath. The Court also notes that Ohio R. Crim. P. 41(A) requires that a search warrant be issued by a judge of a court of record and does not purport to authorize such issuance by a magistrate.

suppress, they also were accorded an opportunity to raise new claims about standing in their Third Motion to Reconsider and Judge Black expressly ruled on those claims.

## Conclusion

The Magistrate Judge concludes Defendants have satisfied all elements of their issue preclusion defense both as to any Fourth Amendment/Fourteenth Amendment procedural due process claim and any Fourteenth Amendment substantive due process claim.  Plaintiffs could not successfully replead the latter claim so as to state a claim upon which relief could be granted.  It is therefore respectfully recommended that the Amended Complaint be dismissed with prejudice as to the City of Vandalia, Ohio, and as to Defendant Robert Large in both his individual and official capacities.

December 28, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure

may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).